Good morning. I'm James Provo, Melvaney & Myers, pro bono counsel for Petitioner Rivera. I'm here with Irmila Rajagopal. In May of last year, this court invited Melvaney to participate as amicus counsel for Petitioner Rivera. He's now substituted as counsel? Last month, we were able to contact Mr. Pineda's office and substitute him as official counsel for Julio Rivera. The question for the court today is, would a reasonable fact finder have been compelled to find that a child being sent back to a gang-riddled country where he'd been the victim of violence, had a reasonable fear of future persecution? The petitioner in this case testified at the immigration hearing when he was nine years old. His case was not skillfully presented to the immigration judge, to put it mildly. The immigration judge suggested at the time that there was another route that could have been taken and didn't understand why it wasn't. And my first question is, is that route still available? There was confusion at the immigration judge, at the immigration hearing, as to whether he was qualified to obtain derivative TPS status. And the answer to that is, no, he was not entitled to derivative. The judge said something which I didn't quite understand, because I don't know the intricacies of immigration procedure, I suppose, about how he could have applied for extended voluntary departure, and then, meanwhile, he could have applied for some sort of discretionary relief. He wasn't talking about derivative temporary protective status. He was talking about some other route. And I'm wondering whether anything like that still exists. Yes. And when we were appointed amicus counsel, we mined every available route to see if there was another path that could have been taken by Mr. Panetta for Mr. Rivera. And there is no other route available other than this. Has this case gone to mediation? I mean, we have a child who's now 14. Is that correct? Yes. 14 years old. Has this been through the circuit mediation program? It has not. Another question I have, you present an interesting legal issue about the street children as to whether that's an identifiable social group. Even if you're incorrect on that point, what about the ineffective assistance of counsel claim? It seems that that's floating out here without matter of lazada exactly being complied with because you all have come into the case late. Is that something that in any event we shouldn't decide and should go back for decision? Well, Your Honor, we argue in the brief that although this was not skillfully or even competently presented by Mr. Panetta at the hearing, if you review the transcript, you can see that. We believe that the predicate facts are in the record for the court to grant asylum to Julio on the basis of his membership in a social group and the likelihood of future persecution. No, but that's not my question. My question is if you are wrong on that point, does he still have an ineffective assistance of counsel claim that maybe needs to be explored in the administrative context before this court would take a look at it? Yes. I'm not saying whether you're wrong or not, but just let's assume you were to lose on that first point. Yeah, I believe if we were to be remanded to the BIA, we would be able to present a case for asylum that was not presented by Mr. Panetta. And I think the way we would be able to do that is to more specifically define the social group and more discreetly define the social group of which Mr. Rivera would be a member. What case law supports your asylum, your particular social group designation? I mean, at some point – it's a very troubling case, as you – obviously. But the problem is that at some point the designation of a particular social group seems to be the group that was persecuted. And there doesn't seem to be a separate designation or a separate set of characteristics of this group. And I'm trying to understand how this group, as you're trying to describe it, fits within the Thomas opinion, say, which is our Court's most recent and most authoritative decision about what's a particular social group. Yeah. I think that there's not any case law on all fours supporting the creation of this particular social group. But you lay out criteria in Thomas, and you have to tell us how this group fits those criteria. Well, I think that the class of homeless orphans targeted by gang violence, they share a common characteristic. And they're perceived by the group as – perceived as a group by society. You've heard the term street kids, street urchins. This is a very discreet group. And what makes this even more discreet is this is a group of children who would be orphaned by the deportation proceeding and whose parents are lawfully residing in the U.S. So the specific group would not just be children who are in El Salvador and on the streets, but those who would be orphaned by virtue of the immigration laws and returned. I would submit for a broader definition that orphans on the streets of El Salvador that are subject to the gang violence that's rampant there is the social group. You know, the only other thing we've found is a Third Circuit case which said Honduran children, street children, which is, of course, a neighboring country but is not El Salvador, are not an identifiable social group. And we are familiar with the Escobar case. And to put it bluntly, we believe the Third Circuit got it wrong. And the Third Circuit's rationale for denying this status was that this would open the floodgates to any homeless child on the streets of a violent country. We believe that in the first instance, this case is unique because this is not only a child who is homeless on the streets, but he has been the victim of past persecution. His parents are – Well, first of all, is there evidence that he is homeless on the streets? That's another problem. He was never actually homeless on the streets. No, but his parents are lawfully residing here under TPS status granted by the Attorney General. If he were sent back, he would be sent back without relatives to care for him. Well, there was some question about the grandma being not only elderly but a little stretched with her other things. But it's never been absolutely clear that he couldn't live there. Yeah. Well, we believe that the immigration judge drew an unreasonable inference. The mother testified at the hearing that he had never met the grandmother. The grandmother was caring for nine children. And for the immigration judge to assume that he could live with the grandmother if he went back down there was an unreasonable inference. And it just wasn't supported in the record. Well, the violence that was offered here was the stealing of the ice cream cone, correct? Yes. When he had his ice cream cone stolen, he was not a street child. He lived with a relative, correct? Right. No, that's true. He did live with a relative. And it's all the more reason that when he is homeless on the streets, he's even more likely to be subject to this type of violence. And I think the important thing to remember about that incident is this goes straight to his subjective fear of being returned to that country. And the government tries to belittle this incident. I mean, this is a nine-year-old child being robbed at knife point. And the IJ found this to be credible testimony. The government minimizes this incident. But how does that incident affect the psyche of a nine-year-old child? I mean, this is a very sad case. However, it could happen to him walking down the street in L.A., too. It happens often, actually. So one of my questions, I guess, relates to that, which is why — if you're going to conceptualize the particular social group issue under the statute, why do you want to add children who are subject to violence? I mean, at that point, you're into the circularity. If there's a group, it seems to me it exists without — it has to exist without regard to the existence of the persecution. It has to be a group that has some cohesion independent of whoever's after them. Right. And I agree. And the group here is homeless street orphans. All right. You might want to save the remaining time. Okay. May it please the Court. My name is Genevieve Holm. I represent Alberto Gonzalez, the respondent in this case. Petitioner gave no fair notice to the agency that he was raising any issue about his membership in a particular social group. Let me start here. There hasn't been any mediation in this case, right? I'm sorry? There has not been any mediation in this case. No, there has not. This strikes me as the kind of case that we have occasionally in which it's a little mysterious to understand why the agency is proceeding with a deportation or with a removal rather than simply declining to do so. And we have had some success recently in sending cases like that with very old people or very young people to mediation to see whether the agency is willing to essentially suspend the removal proceedings. Do you think there is some chance that we could send this off and have it discussed? Your Honor, I spoke with the agency. As you can see, I didn't write the brief. I recently entered my appearance. I did speak with the agency before argument. The agency explained that at this point there is a discretionary possibility, but that could take place only after the removal order is final. There is something called deferred action that is exercised by the field operations director. It is not the practice of the agency to remove minors to a country when their parents are here in the United States under color of law. And what would happen is after a surrender letter is issued, petitioner and his mother could make an appointment with the field operations director. It would be explained to the field operations director that there's no family in El Salvador, but that discretion would not be exercised until there's a final removal order. Stop for just one second. Sorry. You're basically saying get the removal order and take your chances. Why, as a practical matter, if the government is really standing here and saying we really don't deport children who at 9 years old are living here with a mother who's under protected status given to her by the United States government, why wouldn't the government be able to collapse that process so that you could suspend this appeal, there could be a final removal order, and right next to the final removal order could be the exercise of discretion and the papers could cross? I mean, it just seems to me that to put this back into the vagaries of a system that brought us here in the first place is kind of a high-stakes proposition. And if the government is really saying there is this possibility and for whatever reason this case got all the way to the Ninth Circuit and we won't try to figure out why or how, couldn't the government really just, since the government's in control of the process, collapse the process and do this all at once and advise the court? Because if the government were to decide not to exercise its discretion, then we might have to decide the case. And at this point, the agency was not willing to... Okay. Well, that answers our question because it may be that it's not fair to you because you're not the agency and you're not obviously in control of all this. Yes. You only can come representing what they've told you, and we appreciate that. And I did speak to the agency, and I can certainly take back what your owners have said here. Well, no, and I appreciate actually that you did, having been assigned the case, take the initiative to speak to the agency. I mean, we're all here. Everybody agrees it's an unfortunate and difficult case. And one of the options we will consider, although I don't know, because we haven't made any advanced notion on it, is whether we would order it to mediation so this could all be explored in a more neutral setting and not with us and not necessarily, you know, with you having to make representations when you don't have your client with you. Nonetheless, from the legal point of exhaustion, and your owners did raise Thomas, under the... I just want to add one other thing about the mediation, if you're going back to your clients, which is we had a case recently where exactly what Judge McEwen says happened, i.e., that we sent it to mediation, and the resolution was that the petition was withdrawn and at the same time the agency committed to defer the removal as part of the agreement. And I believe what they told me was, I think this was the case they referred to, that they didn't like cases brought to them that way and they would prefer that they go all the way through legal proceedings and then... That, to me, is really amazing. We have basically 6,000 immigration cases going through the Ninth Circuit. The Second Circuit has an enormous volume. And in a case which is so extraordinary as this one for the agency to say that, well, we should just use the resources of the court and then we'll fix it, something is wrong with that system. It's a struggle of systems and bureaucracies, Your Honor. And sometimes there's just a tension. And, again, I can take this back to the agencies and explain how Your Honors see this case. At the point before argument, the agency saw this as a very strong case legally and wanted it explained that they could exercise discretion at the time at which the removal order was final, if it became final. Could they not have exercised this same discretion at any point before? That's not a question I can answer.  You may proceed. Well, the answer, of course, is yes. Well, of course they could have. There's prosecutorial discretion and prosecutors exercise prosecutorial discretion, but immigration officials don't seem to very much. And the answer is that it was not exercised. Yes. Clearly it was not. Maybe we'll give them a chance to decide to exercise their discretion. That will proceed. But you obviously also have some legal points that you would like to make, although I think it's well briefed, but we want to let you get to your argument. I did want to make a few points in light of Thomas, which Your Honors raised, because Thomas did speak to exhaustion and fair notice to the agency. And one thing that Thomas spoke to was the asylum application and whether the petitioner had answered the questions on the asylum application, giving notice about membership in a particular social group. And in this case, at administrative record page 107, petitioner had answered, were you mistreated? No. And then he checked no box, including he did not check membership in a particular social group. And then from the agency's point of view, in terms of evaluating membership in a particular social group and the notice of appeal to the board, petitioner said that he had established political asylum. That's at administrative record page 25. And then in the brief to the board, he said the testimony established the requirements for a grant of political asylum. Administrative record 12. So from the agency's point of view, membership in a particular social group had never been mentioned and political asylum had been mentioned twice. So the record to the board was, therefore, two times for political asylum. Membership in a particular social group had never been mentioned. And it was membership in a social group had not was not mentioned until the petition for review. Well, those mentions were all by his representative. The 12-year-old boy wouldn't say this. Well, certainly, Your Honor. So, therefore, the issue was. I mean, it sounds rather strange to say that this 12-year-old boy has made these very complicated legal arguments. Certainly. By his representative. Yes, Your Honor. And do you think, but speaking of his representative, so your position, of course, is it's not exhaustive. It was not exhaustive. But if it were, there's no such group that's ever been held as a social group. Yes. And in any event, there was no prior resolution by the agency. The agency never spoke to the issue of membership in a social group. So even if not exhausted, it certainly was, there was no prior resolution. So even if you do not dismiss the petition for review on the basis of exhaustion, it would require. It would have to go back. A remand under Ventura. That's an excellent point. And so it could be remanded under Ventura. All right. I think that we have the situation in mind here and the lay of the land. Do you have anything that you want to add? I would just say we endorse the court's advice in setting this case. All right. We will take the case under advisement, obviously. And you will hear from us. The case of Rivera v. Gonzales is submitted.
judges: McKeown, Berzon, King